# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESUS B. CASTANEDA, | Case No. 1:12-cv-00026-AWI-BAM PC |
| Plaintiff, | ORDER GRANTING DEFENDANTS' MOTION TO STRIKE PLAINTIFF'S SURREPLY |
| v. | (ECF No. 80) |
| D. FOSTON, et al., | FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANTS' MOTION TO DISMISS |
| Defendants. | (ECF No. 95) |
| | THIRTY-DAY OBJECTION DEADLINE |
| _____/ | |

## I. Procedural History

Plaintiff Jesus B. Castaneda, a state prisoner proceeding pro se and in forma pauperis, filed this civil rights action pursuant to 42 U.S.C. § 1983 on January 5, 2012. This action proceeds on Plaintiff's second amended complaint against Defendants Reeves, J. Brown, Trimble, Nelson and Martinez for deliberate indifference in violation of the Eighth Amendment and against Defendants Quezada, Lopez, Nelson, Martinez, Webster, Mendez and Stone for retaliation in violation of the First Amendment.

On August 29, 2014, Defendants filed a motion to dismiss the second amended complaint without leave to amend pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendants contend that Plaintiff's Eighth Amendment claim is barred by claim and issue preclusion and Plaintiff's

1  retaliation claim is prohibited by claim preclusion. (ECF No. 70.) Defendants also filed a request
2  for judicial notice. (ECF No. 71.)

3        On September 17, 2014, Plaintiff filed his opposition to the motion to dismiss. (ECF No.
4  73.) Plaintiff also filed a request for judicial notice. (ECF No. 74.)

5        Defendants filed a reply to Plaintiff's opposition on October 1, 2014. (ECF No. 77.)
6  Plaintiff filed a supplemental response to the motion to dismiss on October 14, 2014. (ECF No.
7  79.) On October 16, 2014, Defendants filed a motion to strike Plaintiff's supplemental response.
8  (ECF No. 80.) Plaintiff did not respond to Defendants' motion to strike.

9        The motions have been submitted upon the record without oral argument. Local Rule
10 230(*l*).

11 **II.      Defendants' Request for Judicial Notice**

12       Defendants request that the Court take judicial notice of the records in Plaintiff's habeas
13 corpus proceedings *In re Castaneda*, Fifth District Court of Appeal Case Number F066609. The
14 records include the following: (1) Petition for Writ of Habeas Corpus; (2) May 10, 2013 Informal
15 Response filed by the Federal Receiver; (3) June 4, 2013 Informal Response filed by Plaintiff; (4)
16 June 7, 2013 Supplemental Informal Response filed by the Federal Receiver; (5) August 8, 2013
17 Order Denying the Petition; and (6) Docket Sheet obtained from Fifth District Court of Appeal's
18 website on August 25, 2014.

19       Defendants' request is unopposed. Further, a court may "take judicial notice of matters of
20 public record outside the pleadings and consider them for purposes of [a] motion to dismiss." Mir
21 v. Little Co. of Mary Hosp., 844 F.2d 646, 649 (9th Cir. 1988); MGIC Indem. Corp. v. Weisman,
22 803 F.2d 500, 504 (9th Cir. 1986) (court may take judicial notice of matters of public record
23 outside the pleadings when considering a motion to dismiss). Accordingly, Defendants' request
24 for judicial notice is GRANTED.

25 **III.     Plaintiff's Request for Judicial Notice**

26       Plaintiff requests that the Court take judicial notice of the following documents: (1)
27 Pleasant Valley State Prison's Clinical Case Management Review Committee's Memorandum
28 dated December 14, 2011; (2) October 3, 2013 letter signed by Plaintiff and S. Hosman,

Correctional Sergeant, Health Care Access, Pleasant Valley State Prison; and (3) Director's Level Decision dated August 28, 2014.  The Court did not rely on these documents in reaching the merits of Defendants' motion to dismiss and they are immaterial to the Court's findings and recommendations.  Accordingly, Plaintiff's request for judicial notice is DENIED.

**IV.     Defendants' Motion to Strike Plaintiff's Surreply**

As noted above, Defendants filed a motion to dismiss the Second Amended Complaint, Plaintiff responded and Defendants replied.  (ECF Nos. 70, 73, 77.)  Thereafter, on October 14, 2014, Plaintiff filed a document entitled "Plaintiffs Supplemental Response to Defendants Motion to Dismiss." (ECF No. 79.)  Defendants move to strike Plaintiff's supplemental response because it was unauthorized.

This Court's Local Rules provide for a motion, an opposition, and a reply.  Local Rule 230(l).  Neither the Local Rules nor the Federal Rules of Civil Procedure provide the right to file a response to a reply.  See, e.g., Wyatt v. Zanchi, 2011 WL 5838438, at *5 (E.D. Cal. Nov. 21, 2011).  Furthermore, the Court neither requested a response to Defendants' reply nor granted a request on Plaintiff's behalf to file one.  Accordingly, Defendants' motion to strike is GRANTED, and Plaintiff's supplemental response, filed October 14, 2014, shall be stricken from the record.

**V.      Findings and Recommendations Regarding Motion to Dismiss**

   **A**.    **Relevant Allegations in Second Amended Complaint**

The events in the second amended complaint allegedly occurred while Plaintiff was housed at Pleasant Valley State Prison.  Plaintiff alleges as follows: On February 7, 2010, Plaintiff and his cellmate were assaulted by Correctional Officer Burns.  Responding staff also joined in the assault. Thereafter, Plaintiff was placed in the Administrative Segregation Unit ("Ad-Seg") and his cellmate was airlifted to the Fresno Regional Medical Center. The following day, Defendants Quezada and Lopez photographed, inventoried and boxed all of Plaintiff's personal property, including Plaintiff's PARASTEP I system, which is a microcomputer controlled functional neuromuscular stimulation system that enables independent, un-braced ambulation by people with a spinal cord injury.

On February 23, 2010, Plaintiff was interviewed by Defendants Reeves and J. Brown.

3

During the interview, Plaintiff requested return of the PARASTEP. Plaintiff advised them of the physiological damage that would occur if he was denied access to the PARASTEP. Defendants Reeves and J. Brown refused to provide Plaintiff with the PARASTEP. Plaintiff suffered pressure sores and muscle atrophy. Plaintiff made multiple requests to medical personnel, but was told that custody personnel had taken steps to ensure that he was denied access.

On August 30, 2010, Plaintiff was transferred to Salinas Valley State Prison. On September 26, 2010, he submitted an appeal regarding denial of the PARASTEP. The appeal was denied at all levels.

On June 21, 2011, Plaintiff was transferred back to Pleasant Valley State Prison. On June 22, 2011, Plaintiff submitted appeals to recover the PARASTEP. Plaintiff's appeal was improperly screened, delayed, screened out and not responded to by staff.

On August 4, 2011, Dr. Duenas, a licensed physician, was aware that custody was interfering with Plaintiff's prescribed medical treatment—the PARASTEP—for over 17 months, that this denial endangered Plaintiff's life, that he was still in need of the treatment and that prison officials were refusing to provide it.

On July 19, 2011, Plaintiff saw Dr. Rowe in the satellite clinic. Plaintiff showed Dr. Rowe documentation regarding the PARASTEP and Dr. Rowe accessed Plaintiff's medical records. Dr. Rowe noted that the PARASTEP was currently a prescribed course of treatment and that Plaintiff had medical authorization to possess and use the PARASTEP. Dr. Rowe called Defendant Martinez to the clinic and asked why Plaintiff was being denied access to the PARASTEP. After consulting with Defendant Nelson, Defendant Martinez told Dr. Rowe that Plaintiff was being denied access to the PARASTEP by custody because he had filed multiple appeals against staff. Dr. Rowe informed Defendant Martinez of the physiological damage that would result from interference with treatment. Defendant Martinez informed Dr. Rowe and Plaintiff that Plaintiff would continue to be denied access until his appeals were resolved or withdrawn.

On September 14, 2011, Plaintiff informed Defendant Trimble that custody personnel were interfering with his prescribed medical care. Plaintiff described the need for the device and the damage that prolonged deprivation could cause. Defendant Trimble had Defendant Nelson

interview Plaintiff. Plaintiff informed Defendant Nelson that custody personnel were denying Plaintiff's access to prescribed medical care. Defendant Nelson consulted with Defendant Trimble and informed Plaintiff that the denial would continue.

On November 2, 2011, Plaintiff was diagnosed with severe contractures (a shortening of the tendons and ligaments). On November 28, 2011, Plaintiff was diagnosed with severe osteoporosis. Plaintiff attributes the contractures and osteoporosis to the denial of the PARASTEP.

On December 10, 2011, Plaintiff was allowed to inspect the walker portion of the PARASTEP—the parawalker—which is a special electronically adapted walker that allows the user to stand and walk. It connects to the PARASTEP stimulator via a cable and contains hand controlled switch modules that allow the user access to the software. The parawalker allows the user to control the intensity of the stimulation and activate all functions. The parawalker was severely damage and useless.

On December 21, 2011, Plaintiff was escorted to a conference room by Defendant Mendez. The conference room was occupied by Defendants Webster, Nelson, Stone and an unidentified ISU officer. Defendant Stone informed Plaintiff that as a result of the appeals he had submitted requesting the PARASTEP they were no longer going to store the walker. Plaintiff informed them that he wanted the walker repaired before any decision on its disposition. Plaintiff further explained that he wanted the walker held pending treatment for osteoporosis and a consultation with Plaintiff's personal physician. Defendants Nelson, Webster and Stone told Plaintiff that the walker would not be repaired and that the appeals/pain management committee had asked them to get rid of the walker. When Plaintiff refused to change his response, Defendant Webster looked at the escorting officer and asked him, "Did you hear him say for us to dispose of it?" Defendant Mendez responded, "Yes, I heard him say for us to dispose of it." Defendant Stone informed Plaintiff that he should remember this the next time he thought about filing appeals against staff.

On December 22, 2011, Plaintiff submitted an appeal regarding the damage to the walker and the misconduct of Defendants Nelson, Webster, Mendez and two John Does. After several weeks of not receiving a response, Plaintiff submitted an inquiry regarding his appeal. The appeals coordinators refused to process the appeal or provide instructions.

5

On February 13, 2012, Plaintiff received a response to a separate health care appeal. Attached to the appeal were memoranda authored by Defendants Webster and Mendez indicating that they had filed false reports that Plaintiff had asked for the walker to be destroyed.

Plaintiff again submitted an appeal regarding the memoranda. The appeal was cancelled as untimely. Plaintiff appealed the cancellation. On April 20, 2012, Guillen interviewed Plaintiff regarding his appeal. Foreman and Guillen responded to the appeal and had removed the original proof of service. Plaintiff's appeal was denied at all levels.

As noted above, this action proceeds only on Plaintiff's claim against Defendants Reeves, Brown, Trimble, Nelson and Martinez for deliberate indifference to a serious medical need in violation of the Eighth Amendment and against Defendants Quezada, Lopez, Nelson, Martinez, Webster, Mendez and Stone for retaliation in violation of the First Amendment related to denial of access to his PARASTEP and destruction of his parawalker.

### B. Plaintiff's Habeas Proceedings

On December 7, 2012, the Fresno County Superior Court denied Plaintiff's petition for writ of habeas corpus. The writ concerned arguments that, amongst other things, correctional officers improperly confiscated and destroyed Plaintiff's Parastep Unit. (ECF No. 71, Request for Judicial Notice ("RJN"), Ex. 1, p. 34.)[1]

On February 6, 2013, Plaintiff filed a petition for writ of habeas corpus in the California Court of Appeal. (RJN, Ex. 1, p. 5.) In his petition, Plaintiff alleged the following grounds for relief: "Failure of Prison administration officials to properly process petitioners Administrative Appeals which led to Denial of Medical Care and ultimately the destruction of petitioners prescribed medical appliance. No officials were found violating policy." (RJN, Ex. 1, p. 7.) As supporting facts, Plaintiff alleged that he was placed into Administrative Segregation on February 7, 2010, and was denied access to medical care and his medical appliances, including the Parastep. His requests for these items were ignored. (RJN, Ex. 1, p. 8.) Plaintiff remained at Pleasant Valley State Prison until April 23, 2010, when he was placed at Salinas Valley State Prison (DMH). (Id.) Plaintiff returned to Pleasant Valley State Prison on June 17, 2011. (Id. at p. 9.)

---

[1] Page numbers correspond to the Court's CM/ECF pagination.

Plaintiff attempted to recover the Parastep through appeals. (Id at pp. 9-10.) On August 3, 2011, Plaintiff submitted an ADA appeal challenging the prison administration's determination that the Parastep was not covered by the ADA. (Id. at p. 10.) On November 1, 2011, Plaintiff was examined by Dr. Williams, who confirmed that the Parastep was a "medical necessity." (Id. at pp. 10-11.) On November 17, 2011, the Appeals/Pain Management Committee decided to exclude the Parastep from coverage under both the ADA and the ARP. (Id. at p. 11.) Following a bone density scan, Plaintiff again was brought before the Appeals/Pain Management Committee. The committee told Plaintiff that standing and walking was no longer possible and, because of the committee's decision, the Parawalker would become contraband that Plaintiff would have to send home or it would be disposed of. Plaintiff also was told that he would be allowed to use the functional electrical stimulation portion of the Parastep. (Id.) On December 10, 2011, Plaintiff examined the Parawalker and noted that the buttons appeared broken. On December 21, 2011, Plaintiff was approached by Officer Mendez, who said that Plaintiff had to provide an address so they could mail the walker. Plaintiff explained to Officer Mendez that he needed the walker to undo the damage of the preceding 22 months and needed time to consult with his personal physician. Officer Mendez left and returned a short time later. Officer Mendez informed Plaintiff that Lieutenant Webster wanted to speak with Plaintiff about the walker. Plaintiff told Officer Mendez that he had already given him a response, but Officer Mendez refused to leave until Plaintiff came out to see Lieutenant Webster. Officer Mendez escorted Plaintiff to see Lieutenant Webster, Lieutenant Nelson, and Sgt. Stone. Plaintiff explained to them that he needed the walker and he needed time to consult with his personal physician. Plaintiff also asserted that the only reason they were trying to dispose of the walker was to try to cover-up the damage it had sustained during the time it was outside of his possession. At this point, Lieutenant Webster looked at the escorting officer and said, "Did you hear him say for us to dispose of it?" Officer Mendez responded, "Yes, I heard him say for us to dispose of it." (Id. at pp. 12-13.) In February 2012, Plaintiff received a memorandum prepared by Lt. Webster and Officer Mendez that falsely stated Plaintiff requested the walker be destroyed. (Id. at p. 14.)

Following submission of the petition for habeas corpus, the appeals court ordered briefing.

7

(ECF No. 71-1, RJN, Ex. 7.)

On May 10, 2013, the Medical Receiver, J. Clark Kelso, filed an informal response to Plaintiff's petition for writ of habeas corpus. (ECF No. 71-1, RJN, Ex. 2.) The Medical Receiver addressed whether Plaintiff had shown that his current lack of the Parastep made his medical care inadequate in violation of the Eighth Amendment. (Id. at pp. 4-5.) The Medical Receiver found that "currently allowing Plaintiff to have and use a Parastep would itself be an excessive risk to his health" and his "lack of a Parastep cannot constitute inadequate health care resulting from deliberate indifference." (Id. at p. 5.) The Medical Receiver indicated that "there [was] no objective clinical evidence to support [Plaintiff's] implicit contention that his current lack of a Parastep means that an 'excessive risk' to his health . . . has been 'consciously disregarded.'" (Id. at pp. 5-6.) The Medical Receiver contended that a Parastep was medically contraindicated for Plaintiff because of significant osteoporosis diagnosed in November 2011. (Id. at p. 6.)

Following the informal response from the Medical Receiver, Plaintiff countered with an Informal Response. (ECF No. 71-1, RJN Ex. 3.) Plaintiff's response addressed the Medical Receiver's contention regarding osteoporosis. (Id. at pp. 24-25.) Plaintiff also argued that the Parastep had always been considered a medical necessity. (Id. at pp. 17-22.)

On June 7, 2013, the Medical Receiver submitted a Supplemental Informal Response to Petition for Writ of Habeas Corpus, which addressed the issue of whether the Parastep was contraindicated by Plaintiff's osteoporosis. (ECF No. 71-1, RJN, Ex. 4.) Plaintiff filed a Supplemental Reply on June 19, 2013. (ECF No. 71-1, RJN Ex. 5.)

On August 8, 2013, the California Court of Appeal denied Plaintiff's petition for writ of habeas corpus. The appellate court ordered that Plaintiff's "medical claim regarding treatment with the Parastep device is denied based on the prison's medical evaluation." (RJN, Ex. 6, p. 85.)

**B.     Legal Standard**

A motion to dismiss brought pursuant to Rule 12(b)(6) tests the legal sufficiency of a claim, and dismissal is proper if there is a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. Conservation Force v. Salazar, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (quotation marks and citations omitted), cert. denied, 132 S.Ct.

1762 (2012). A motion to dismiss on the basis of claim or issue preclusion may properly be brought under Rule 12(b)(6). See, e.g., Scott v. Kuhlmann, 746 F.2d 1377, 1378 (9th Cir. 1984) (affirming dismissal of complaint pursuant to Rule 12(b)(6) on res judicata grounds).

Federal courts are required to give state court judgments the preclusive effects they would be given by another court of that state. Brodheim v. Cry, 584 F.3d 1262, 1268 (9th Cir. 2009) (citing Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 84, 104 S.Ct. 892 (1984) and Maldonado v. Harris, 370 F.3d 945, 951 (9th Cir. 2004)) (quotation marks omitted). A state habeas judgment may have preclusive effect on a later federal § 1983 action. Gonzales v. Cal. Dep't of Corr., 739 F.3d 1226, 1230-31 (2014).

Claim preclusion bars litigation of claims that were or could have been raised in a prior action. Holcombe v. Hosmer, 477 F.3d 1094, 1097 (9th Cir. 2007) (quotation marks omitted). Issue preclusion bars "successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim." Taylor v. Sturgell, 530 U.S. 880, 892, 128 S.Ct. 2161, 2171 (2008) (internal quotations and citation omitted). "The prerequisite elements for applying the [preclusion] doctrine to either an entire cause of action or one or more issues are the same: (1) A claim or issue raised in the present action is identical to a claim or issue litigated in a prior proceeding; (2) the prior proceeding resulted in a final judgment on the merits; and (3) the party against whom the doctrine is being asserted was a party or in privity with a party to the prior proceeding." Boeken v. Philip Morris USA, Inc., 48 Cal.4th 788, 797, 230 P.3d 342 (2010) (internal quotation and citation omitted).

**2.  Discussion**

Final Judgment on the Merits

Reasoned denials of California habeas petitions have claim-preclusive effect on section 1983 litigation. See Gonzales, 739 F.3d at 1231. Here, the California Court of Appeal denied Plaintiff's petition for writ of habeas corpus in a written order. (ECF No. 71-1, RJN Ex. 6.) There is no indication that Plaintiff appealed the appellate court's decision. Accordingly, Plaintiff's state habeas action resulted in a final judgment on the merits by the California Court of Appeal.

9

Identity of Parties

In both his state habeas action and this action, Plaintiff alleged that he was wrongfully denied access to his Parastep in 2010 while housed at Pleasant Valley State Prison. Plaintiff also accused prison officers of denying his appeals, interfering with his medical care and destroying his Parawalker. Plaintiff expressly referenced certain of the underlying defendants in this action, namely Defendants Nelson, Webster, Mendez and Stone. Although Plaintiff named a different warden as respondent in his habeas action and did not identify all of the underlying defendants, this discrepancy is not determinative. California claim preclusion rules only require identity of the party *against whom* the doctrine of claim preclusion is being asserted. See Boeken, 48 Cal.4th. at 797; see also San Diego Police Officers' Ass'n v. San Diego City Emps.' Ret. Sys., 568 F.3d 725, 734 (9th Cir. 2009) (California's preclusion rules require that "the party to be precluded must itself have been a party, or in privity with a party"); Furnace v. Giurbino, 2013 WL 6157954, at *4 (N.D. Cal. Nov. 22, 2013) ("[U]nder California claim preclusion rules, the only identity of parties required is the identity of the party against whom claim preclusion is sought."). Here, Defendants assert the doctrine of claim preclusion against Plaintiff. There is no dispute that Plaintiff was a party to the state habeas action.

Same Cause of Action

Under California law, a final judgment of a state court precludes further proceedings if they are based on the same cause of action. Brodheim, 584 F.3d at 1268 (citing Maldonado, 370 F.3d at 951) (quotation marks omitted). California courts employ the primary rights theory to determine what constitutes the same cause of action for claim preclusion purposes, and under this theory, a cause of action is (1) a primary right possessed by the plaintiff, (2) a corresponding primary duty devolving upon the defendant, and (3) a harm done by the defendant which consists in a breach of such primary right and duty. Id. (citing City of Martinez v. Texaco Trading & Transp., Inc., 353 F.3d 758, 762 (9th Cir. 2003)) (quotation marks omitted). If two actions involve the same injury to the plaintiff and the same wrong by the defendant, then the same primary right is at stake even if in the second suit the plaintiff pleads different theories of recovery, seeks different forms of relief and/or adds new facts supporting recovery. Id. (citing

Eichman v. Fotomat Corp., 147 Cal.App.3d 1170, 1174, 197 Cal.Rptr. 612 (1983)) (quotation marks omitted).

      In his habeas action, Plaintiff alleged prison officials denied him medical care and access to the Parastep following his placement in Administrative Segregation in 2010. (ECF No. 71, RJN Ex. 1, p. 8.) Plaintiff also alleged that prison officials improperly destroyed his Parawalker. (Id. at pp. 12-14.) Similarly, in this section 1983 action, Plaintiff alleges that prison officials denied him medical care and access to the Parastep following his placement in Administrative Segregation in 2010. Plaintiff also alleges that prison officials improperly destroyed his walker in retaliation for his appeals.

      Plaintiff asserts that the causes of action in his state and federal actions are distinct and do not involve same primary right. Plaintiff contends that his habeas action concerned a procedural matter regarding meaningful review of his administrative appeals, whereas his federal action concerns specific acts that amount to substantive constitutional violations. Plaintiff argues that because the actions involve different causes of action, his federal action is not barred by claim preclusion.

      Although the habeas action included allegations concerning the processing of his administrative appeals, the habeas action, like the instant action, also involved Plaintiff's right to receive adequate medical care and the alleged harm resulting from his lack of access to the Parastep. The habeas briefing focused primarily on Plaintiff's medical treatment with the Parastep. Indeed, the Medical Receiver's briefing specifically addressed Plaintiff's entitlement to the Parastep under the Eighth Amendment and whether prison officials were deliberately indifferent. (ECF No. 71-1, RJN Ex. 3, pp. 17-22.) Plaintiff's responsive brief also addressed his entitlement to the Parastep as a medical necessity. (ECF No. 71-1, RJN Ex. 3, pp. 17-22.)

      Despite Plaintiff's assertion to the contrary, the habeas action was not limited solely to the issue of Plaintiff's current lack of the Parastep. Plaintiff's own habeas petition and filings included allegations regarding denial of the Parastep spanning from his Administrative Segregation placement in February 2010 to his current condition. Further, the Medical Receiver's determination was based, in part, on findings from 2011 regarding Plaintiff's osteoporosis. (ECF

No. 71-1, RJN Ex. 2, p. 6.)  The appellate court denied Plaintiff's "medical claim regarding treatment with the Parastep device based on the prison's medical evaluation."  (ECF No. 71-1, RJN Ex. 6.)

The Court finds that the injury and wrong in both the habeas action and federal action are identical; that is, Plaintiff was injured by the failure of prison officials to return his Parastep following its allegedly wrongful confiscation in February 2010 and by the eventual destruction of the walker by prison officials.  The Court therefore finds that this action involves the same primary rights as his state habeas action.  Accordingly, the Court will recommend that Plaintiff's Eighth Amendment claim be dismissed as barred by claim preclusion.

The Court also finds that claim preclusion prohibits Plaintiff's retaliation claim.  Although such a claim was not explicitly raised in his habeas action, the doctrine of claim preclusion not only prevents a party from relitigating claims that were raised in prior action, but also prevents litigation of claims that could have been raised in a prior action. Allen v. McCurry, 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980).  It is evident that Plaintiff litigated the denial of his access to the Parastep, the filing of multiple administrative appeals, and the destruction of his walker without justification in his habeas action.  These are the same allegations underlying his retaliation claim in this action.  There is no indication that the Court of Appeal expressly refrained from addressing this issue.

**IV.     Recommendation**

Based on the foregoing, it is HEREBY ORDERED that Defendants' motion to strike Plaintiff's surreply is GRANTED, and Plaintiff's supplemental response, filed on October 14, 2014, is STRICKEN from the record.  Further, it is HEREBY RECOMMENDED that Defendants' motion to dismiss the second amended complaint without leave to amend, filed on August 29, 2014, be GRANTED.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to

Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **January 30, 2015**                    /s/ Barbara A. McAuliffe               _
                                                 UNITED STATES MAGISTRATE JUDGE